# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00587-CV

**Candice Nicole White, Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT
### NO. B-05-0083-CPS, HONORABLE JAY K. WEATHERBY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from a judgment terminating appellant Candice Nicole White's parental rights to her son, D.E.W.[1]  D.E.W. was removed from White's care in March 2005, when he was about one week old and White was fifteen years old.

The Department began its investigation and decided to take custody of D.E.W. after receiving a report shortly after he was born alleging that the home in which he and White were living lacked electric and water service.  A Department caseworker visited the home and learned that White and D.E.W. lived in the home with White's parents and two sisters.  White's mother told the caseworker that she and her husband had been charged with drug possession and neglect of a disabled child when they lived in Utah and that the State of Utah had removed the children about

---

[1]  D.E.W.'s father's parental rights were also terminated.

seven years earlier.  The caseworker observed that the home was unsanitary and cluttered with trash and that there were mattresses on the floor.  There were no appropriate sleeping or living spaces for D.E.W., no observable infant items, including a crib, and no place to prepare food for the child.  The Department alleged that D.E.W.'s father was twenty-two years old and had a criminal history, including charges of marihuana possession and sexual assault of a child due to his relationship with White, which began when she was fourteen and he was twenty-one.

After D.E.W. was removed from her care, White was ordered to undergo a drug assessment and psychological exam, attend counseling, and complete parenting classes.  White's counseling and parenting classes through the Department were eventually cancelled due to non-compliance and her failure to appear, but she found a new class and a different therapist through other resources.  Despite White's efforts, the Department moved ahead and sought termination because it believed she had not progressed sufficiently to provide a safe home for D.E.W.

There was testimony at trial that White and the baby were sharing the home with five other people—her parents, her sisters, and her seventeen-year-old sister's boyfriend.  White's older sister and her boyfriend shared one room, and the rest of the family slept on mattresses on the floor in the living room.  The family lacked a crib or other suitable place for D.E.W. to sleep and the caseworker was told that the infant would sleep on one of the mattresses on the floor, sharing it with White and her mother.  The mattress in question was "urine-soaked," dirty, and lacked sheets.  The family had four dogs, which were tied up in front of the house and behaved aggressively, and several cats in the residence.  The caseworker testified that the house was filthy and that "there was evidence that there was smoking and drinking, things of this nature."  White and her younger sister "had been

2

missing a lot of school, had lice, [and had] different problems that continued to show a continued pattern of what we call chronic and high risk for children." In addition to removing D.E.W. from the home, the Department also removed White and her younger sister, but White and her sister were eventually returned to their parents custody. While D.E.W. was in the Department's custody, White's father obtained employment, which allowed the family to move into a cleaner, more suitable house. However, the Department's witnesses testified that D.E.W. had asthma, which raised concerns about White's parents' continuing to smoke in the house. The Department also presented evidence about on-going health and sanitation concerns and presented testimony by caseworkers, therapists, and instructors, who expressed concern that White was not prepared to care for an infant. Finally, the Department presented evidence that D.E.W. was doing well and had bonded to his foster family, who hoped to adopt him if White's parental rights were terminated.

The trial court ruled that White's parental rights should be terminated, finding that White had placed or allowed D.E.W. to remain in an unsafe environment and had engaged in or placed him with people who engaged in dangerous conduct and that termination was in the child's best interest. White's appointed counsel has filed a brief stating that after a thorough review of the record, she believes this appeal is frivolous.[2] The brief presents a thorough and professional evaluation of the record discussing and demonstrating why there are no arguable grounds for

---

[2] This and other Texas courts have held that it is appropriate in a parental termination case to file a brief asserting that the appeal is frivolous, similar to the procedure used in criminal cases. *See*, *e.g.*, *Matthews v. Texas Dep't of Protective & Regulatory Servs.*, No. 03-04-00184-CV, 2005 Tex. App. LEXIS 1231, at *2 (Austin Feb. 17, 2005, no pet.) (mem. op.); *In re D.E.S.*, 135 S.W.3d 326, 329 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *In re K.D.*, 127 S.W.3d 66, 67 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

reversal. White has not filed a pro se brief, and her parents, who intervened at the trial court level, did not file a notice of appeal. The Department filed its own brief agreeing that the appeal is frivolous and explaining why it believes there are no arguable grounds for reversal.

We have conducted our own review of the record and we agree with counsel's assessment that the appeal is frivolous. We therefore affirm the trial court's judgment. We grant counsel's request to withdraw from the case.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Puryear and Henson

Affirmed

Filed: August 29, 2007

4